IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 13-cv-02526-RBJ

RICHARD B. LANGILLE and
GARY F. SKINNER,

    Plaintiffs,

v.

HUNTER DOUGLAS, INC.,

    Defendant.

## ORDER

This matter comes before the Court on the defendant's Motion for Summary Judgment [ECF No. 36]. The Court exercises diversity jurisdiction pursuant to 28 U.S.C. § 1332. For the following reasons, the motion is denied.

## BACKGROUND

This case begins with the sale of the plaintiff's company, Electronic Solutions, Inc. ("ESI"), to the defendant, Hunter Douglas, Inc. ("HDI") in 2007. ESI is a company that specializes in designing, producing, and selling motorized control products for use with window coverings and other bi-directional motorized products (collectively, the "Products"). HDI is a large manufacturer and seller of window coverings and related products. In early 2007 David Sonnenberg, the co-CEO of HDI, approached the plaintiffs about purchasing ESI and expanding the market presence of the Products. In consideration for all ESI stock, Mr. Sonnenberg proposed a purchase-sale structure that would include an upfront payment as well as future earn-

out payments over seven years. According to the plaintiffs, Mr. Sonnenberg impressed upon them the substantial profits and resulting earn-out payments he believed would result from the purchase. In particular, he projected "conservative" estimates of earn-out payments surpassing $18 million over the seven years. *See* Langille Decl. [ECF No. 40-1] ¶ 6.

On or about March 22, 2007 the parties entered into a Stock Purchase Agreement ("SPA") that contained the terms surrounding HDI's purchase of all ESI stock from the plaintiffs. [ECF No. 30-1]. As had been discussed, the SPA provided that the stock purchase would be funded by a cash payment due at the closing of the SPA as well as cumulative contingent earn-out payments (hereinafter the "Earn-Out Payments") to be paid in accordance with the terms and conditions set forth in Article II of the SPA. *Id.* § 1.03. Article II provides that the Earn-Out Payments were to be determined on a cumulative basis over an eighty-one (81) month period to be paid out after the end of each applicable year, from December 31, 2007 to December 31, 2013. *Id.* § 2.01. The Earn-Out Payments would be calculated as a percentage of ESI's profit-after tax ("PAT") as set forth in § 2.02. *Id.* § 2.01(ii).

The SPA also specified that HDI "shall manage [ESI] as a distinct business entity *substantially in accordance with the strategic business plan* attached hereto as 'Exhibit A' (the 'Strategic Business Plan'), provided, however, that [HDI] shall be free to deviate therefrom, after consulting with [Langille] and [Skinner] if (i) in its good faith opinion, this is desirable and necessary to address major changes in economic or market conditions or a material deterioration in [ESI's] position or results, or (ii) the PAT of [ESI] for any year is less than 50% of [ESI's] PAT for the immediately preceding year." *Id.* § 5.01(a) (emphasis added).

As referenced above, HDI developed a Strategic Business Plan ("SBP") that it agreed to follow in guiding ESI's integration into HDI and in fostering ESI's continued success. The SBP

provides that HDI will become the "principal marking and sales channel for the Products."[1] [ECF No. 30-2 at 2]. To that end, HDI agreed to set up a new business unit called Hunter Douglas Home Automation ("HDHA") which was to "market the Products to consumers, home integrators, HD dealers and HD fabricators, and sell the Products to HD fabricators." *Id.* The SBP continues, "In order to help build HD[I]'s and [ESI]'s market position in this channel, HDHA's cumulative advertising and marketing budgets through 2010 will amount to at minimum $1.5m[illio]n." *Id.* It also provides that "Mermet US will sell and market a selection of Products on behalf of [ESI], principally to larger fabricators servicing the commercial market." *Id.* The SBP ends by acknowledging "that the implementation of this Strategic Business Plan is likely to have a material and substantial impact (positive and negative) on [ESI's] profitability and, consequently, on the calculation of the incentive amount provided for in the Employment agreements or on the Earn-Out provided for in the Stock Purchase Agreement." *Id.* at 6.

The plaintiffs claim that HDI repeatedly and consistently failed to manage ESI substantially in accordance with the SBP, thereby negatively impacting ESI's sales and performance, and, in turn, the PAT and yearly Earn-Out Payments. Second Amended Complaint [ECF No. 30] ¶ 40. "As a result of HDI's unilateral decision to materially deviate from the agreed-upon Strategic Business Plan, ESI's PAT steadily declined, resulting in Earn-Out Payments that fell drastically short of the projections authored by HDI." *Id.* ¶ 50. Instead of receiving nearly $18 million apiece in Earn-Out Payments over the seven year period, HDI paid each plaintiff only $389,710.50. *Id.* ¶ 52. Based on these allegations, the plaintiffs have filed two claims: breach of contract and breach of the implied covenant of good faith and fair dealing.

---

[1] The SBP defines "the Products" as ESI's products. [ECF No. 30-2 at 1].

The defendant files the present motion seeking judgment as a matter of law, arguing that the plaintiffs' claims are barred by (1) the plain language of § 2.03(a) of the SPA; (2) the doctrine of waiver; (3) the doctrine of accord and satisfaction; and (4) the statute of limitations. For the following reasons, the motion is denied.

## LEGAL STANDARD

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Concrete Works of Colorado, Inc. v. City and County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

## ANALYSIS

**A. <u>Section 2.03(a)</u>.**

"The interpretation of a written contract is generally a question of law." *In re May*, 756 P.2d 362, 369 (Colo. 1988). When interpreting a contract, "the court should strive to ascertain and give effect to the mutual intent of the parties." *Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1313 (Colo. 1984). Intent is primarily determined from the language of the

4

agreement itself such that "extraneous evidence of intent is only admissible where there is an ambiguity in the terms of the agreement." *In re May*, 756 P.2d at 369. To determine whether there is any ambiguity within the agreement, "the instrument's language must be examined and construed in harmony with the plain and generally accepted meaning of the words employed . . . ." *Radiology Prof'l Corp. v. Trinidad Area Health Ass'n, Inc.*, 577 P.2d 748, 750 (Colo. 1978). "The mere fact that there is a difference of opinion between the parties regarding the interpretation of an instrument does not of itself create an ambiguity." *Id.*

The defendant argues that the plain language of § 2.03(a) of the SPA bars the present action. Section 2.03(a) provides that

> [HDI] shall cause copies of the balance sheet, statement of income and retained earnings, and statement of changes in financial position (including notes thereto) of ESI for each applicable year during the Contingent Earn-Out Payment Period, together with the determination of PAT for such year (the "Periodic Report"), to be delivered to [Langille and Skinner], as soon as practicable after the close of each such year, but in any event within 60 days after the end of any such year. Each Periodic Report shall set forth a *calculation* of the amount of the cumulative contingent earn-out payment which is then payable. The PAT for each such year and the cumulative contingent earn-out payment, as so determined, shall be binding upon the parties hereto, unless [Langille and Skinner] shall object thereto and shall so notify [HDI], in writing, within 30 days after delivery of all information required to be delivered by [HDI] pursuant to this Section 2.03, such notification to set forth the basis for such objection. As applicable, [Langille and Skinner] and [HDI] shall thereafter attempt in good faith to resolve the disputed item(s), including, but not limited to, *by the use of three (3) independent public accountants* (one (1) each appointed by [HDI] and by [Langille and Skinner], with such designated public accountants choosing the third), with the determination of such independent accountants being binding upon [HDI] and [Langille and Skinner].

SPA [ECF No. 30-1] § 2.03(a) (emphasis added).

The defendant contends that the above-quoted language is clear and unambiguous, and that it bars this action because the plaintiffs never objected, in writing, to any of the PAT calculations. In turn, the related Earn-Out Payments are binding such that the plaintiffs cannot

5

now contest the amounts they received each year. Though the Court agrees that the language is clear and unambiguous, the Court disagrees with the defendant's interpretation of the provision. Section 2.03(a) concerns the proper *calculation* of each year's PAT, which is then used to calculate the Earn-Out Payment. Indeed, the provision calls for any dispute to be resolved by three independent accountants, professionals who are competent to analyze accounting techniques, not inadequate performance claims. The plaintiffs' complaint, on the other hand, concerns whether HDI failed to sufficiently perform its obligations under the SPA and SBP, thereby causing ESI to suffer dramatically lower returns than it would have had HDI adequately promoted the company and its products. While the plaintiffs compare the projected Earn-Out Payments with the actual payments made to make out the plausible basis for their allegations (and perhaps to set a standard by which to calculate damages), they do not argue that the Earn-Out Payments were miscalculated. As such, the defendant's reliance on § 2.03(a) is misplaced.

    **B. Waiver.**

"Waiver arises when a party to a contract is entitled to assert a particular right, knows the right to exist, and intentionally abandons that right." *Glover v. Innis*, 252 P.3d 1204, 1208 (Colo. App. 2011). Waiver may be express or implied by conduct. *Id.* HDI contends that by accepting the Earn-Out Payments each year and by otherwise tolerating HDI's performance the plaintiffs waived their claims against HDI. *See* [ECF No. 36 at 28]. Meanwhile, the defendant's motion is brimming with references to the plaintiffs' unwavering frustration with HDI throughout the years. Any claim suggesting that the plaintiffs "clearly grew comfortable" with how HDI performed its contractual duties, *id.*, is unsupported by the evidence in the record. And no persuasive argument has been made that the plaintiffs waived their claims against HDI simply by

accepting the Earn-Out Payments. At the very least, whether the plaintiffs *intentionally* abandoned their right to bring these claims is a fact dispute that the Court cannot resolve.

### C. Accord and Satisfaction.

"Where a claim is unliquidated or in dispute, payment and acceptance of a less sum than claimed, in satisfaction, operates as an accord and satisfaction." *Stanley-Thompson Liquor Co. v. S. Colorado Mercantile Co.*, 178 P. 577, 578 (Colo. 1919) (internal quotation marks and citation omitted). "In order to constitute an accord and satisfaction, it is necessary that the money should be offered in full satisfaction of the demand, and be accompanied by such acts and declarations as amount to a condition that the money, if accepted, is accepted in satisfaction; and it must be such that the party to whom it is offered is bound to understand therefrom that, if he takes it, he takes it subject to such conditions." *W. Air Lines v. Hollenbeck*, 235 P.2d 792, 797 (Colo. 1951). The defendant argues that the plaintiffs' claims are barred because each year the plaintiffs negotiated and accepted heightened Earn-Out Payments "in full resolution of any conflict." [ECF No. 36 at 26]. In response, the plaintiffs contend that the negotiated Earn-Out Payments concerned a disagreement over which expenses should have been attributed to HDI versus to ESI when calculating the yearly PAT, and that "the parties never discussed, as part of those conversations, resolving the sorts of claims Plaintiffs assert here." [ECF No. 40 at 22]. In sum, the plaintiffs contend that the Earn-Out Payment adjustments were never offered in full satisfaction of any demand regarding HDI's failure to adequately promote ESI and the Products, and the acceptance of these payments did not amount to satisfaction of any such claim. This disagreement presents a genuine dispute of material fact whose resolution must be left to a factfinder.

### D. Statute of Limitations.

Colorado law provides that actions for breach of contract must commence within three years after the cause of action accrues. C.R.S. § 13-80-101(1)(a). "A cause of action for breach of any express or implied contract, agreement, warranty, or trust shall be considered to accrue on the date the breach is discovered or should have been discovered by the exercise of reasonable diligence." C.R.S. § 13-80-108(6); *see also Murry v. GuideOne Specialty Mut. Ins. Co.*, 194 P.3d 489, 491 (Colo. App. 2008).

The plaintiffs allege that HDI committed the following breaches:

1. HDI failed to create, or in the alternative to adequately operate and fund, HDHA;

2. HDI failed to adequately market the Products to consumers, home integrators, HDI dealers and HDI fabricators, and sell the products to HDI fabricators;

3. HDI did not become the principal marketing and sales channel for the Products;

4. HDI failed to spend $1.5 million in marketing and advertising funds by the end of 2010 in promotion of ESI and the Products; and

5. HDI failed to ensure that Mermet US would sell and market the Products on behalf of ESI.

*See* [ECF No. 40 at 14].[2]

The plaintiffs filed the current action on August 26, 2013, meaning that any claim arising before August 26, 2010 is barred by the statute of limitations. HDI contends that the statute of limitations has already run on all of these claims because the plaintiffs were aware of these

---

[2] In their Response, the plaintiffs allege that HDI has not yet paid them their 2013 Earn-Out Payment. However, this allegation is not found on the face of the Second Amended Complaint. Should the plaintiffs seek to include this claim in their request for relief they must file for leave to file a third amended complaint.

8

alleged breaches as early as 2007 and at the latest by mid-2010. The defendant focuses its argument on the second part of the test, the date the breach is discovered or should have been discovered by the exercise of reasonable diligence. This focus is misplaced. The real question is when these alleged breaches occurred. The SBP includes only one date by which any performance was due: HDI was obligated to spend $1.5 million in marketing and advertising funds to support ESI and the Products by the end of 2010. By its plain terms, breach of this duty could have only occurred after December 31, 2010, within the statutory limitations period. All of the other obligations contained in the SBP were continuing obligations; there was no date by which they were to be performed.

As a result, the dates of breach are unclear. The plaintiffs claim that while they were frustrated by HDI's performance early on in the relationship, they believed that it would improve over time and did not consider these early disappointments to be material breaches. HDI's position is that the plaintiffs knew of the breaches in 2007 and 2008, when they began complaining. However, this presupposes that an actionable breach occurs in the first instance in which a party's performance does not fully meet the other party's expectations, even for continuing obligations. No law has been cited in support of such a far-reaching legal conclusion. The Court finds that the dates on which the material breaches giving rise to this action occurred are genuine disputes of material fact – save for HDI's alleged failure to spend $1.5 million by the end of 2010 – and must be resolved by a factfinder.

## ORDER

For the foregoing reasons, the defendant's Motion for Summary Judgment [ECF No. 36] is DENIED.

DATED this 24th day of November, 2014.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge